## Pruett v. Pruett.

(Decided January 25, 1918.)

Appeal from Kenton Circuit Court.

Divorce—Disposition of Property.—In an action for divorce, evidence examined and held to show that a half interest in certain property was conveyed to the wife during marriage and in consideration or by reason thereof, and should be restored to the husband.

B. F. GRAZIANI for appellant.

JOHN O'NEAL for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Olga Pruett brought this suit against her husband, John Pruett, for divorce and alimony and for the custody of their infant child, Harry Pruett. She was

granted the relief asked, but at the same time was directed to restore to her husband a house and lot to which they had joint title. Until the conveyance was made, she was allowed alimony in the sum of $5.00 per week. Thereafter her alimony was fixed at $7.00 per week. From that part of the judgment ordering a restoration of the property, she prosecutes this appeal.

The order of restoration was based on section 425 of the Civil Code, which provides that every judgment for divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof, and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage. It is the contention of appellant that the order of restoration was improper because the conveyance was made to her for a valuable consideration and not in consideration by reason of marriage.

It appears that at the time of the marriage, appellee owned two lots in Latonia. After their marriage, he built a house on one of these lots. The house cost $1,400.00. Of this sum appellee furnished $400.00 and the remaining $1,000.00 was borrowed from a building association. He at first received $15.00 a month rent for the house and after the erection of a stable, $17.00 a month. The building association dues were $3.00 a week. This property was sold in August, 1908, and after the payment of the street assessments and the amount due the building association, the remainder of the purchase price amounted to $2,080.00. Appellee endorsed the check for the purchase money and delivered it to his wife. The sum of $1,080.00 was deposited to appellee's credit in the First National Bank of Latonia, and $1,000.00 in the name of his wife in the Citizens National Bank. Subsequently appellee bought the lot now in controversy for $750.00, and paid for it by his own check. The title to this lot was taken in their joint names. They then proceeded to erect a house on the lot. To secure the necessary funds, the sum of $400.00 was borrowed from appellant's brother and $500.00 from a building association. With these sums and the

$1,000.00 to the credit of his wife, the house was paid for.

According to the evidence of appellant, appellee was making only $7.50 per week at the time they were married, and she was making as much as he was. This she did by picking berries and making jellies and preserves which she disposed of to her neighbors or to the woman's exchange in Cincinnati. She also worked for a while at the woman's exchange and at the market house. She further says that the payments on the first house were made out of a common fund to which she contributed as much as her husband. Her testimony on this point, which was not objected to, was corroborated by her neighbors and relatives. It was further shown by Rev. W. F. Taylor, that John Pruett admitted to him that his wife had worked as hard as he did, not only in the home, but by doing outside labor.

According to the evidence for appellee, appellant never earned more than $25.00 by making preserves and jellies and doing outside work, and this money was used for her own benefit, and not for the purpose of paying for either of the houses. On the contrary, he owned the lots on which the first house was built and the indebtedness incurred for its erection was discharged solely out of his wages and the rent.

It is clear from the evidence that the original lots in Latonia belonged to appellee and the house which was erected thereon cost only $1,400.00. Of this sum $400.00 was furnished by appellee and $1,000.00 was borrowed from the building association. It is further apparent that the rent of this house was sufficient to pay the building association dues. Even if it be conceded that appellant paid half the dues of $3.00 per week, her interest in that house could not have exceeded $500.00. As a matter of fact, however, appellant's evidence does not show that she contributed any particular sum or sums. She merely says in a general way, that she helped to pay for the property and paid as much as her husband did. If such was the case, it would be proper, of course, to balance the equities between the parties and to give appellant credit for sums actually paid. As the case is presented, however, appellant's evidence is too vague and uncertain to justify the finding that any particular portion of the purchase price of the original property or the property in controversy, was actually

paid by appellant out of her own earnings. Taking into consideration the manner in which the property was acquired and the absence of satisfactory evidence that appellant's earnings contributed to its purchase, we conclude that the chancellor did not err in ordering a restoration of the property on the ground that she obtained the property during marriage and in consideration or by reason thereof.

Judgment affirmed.